In the United States District Court
Southern District of Indiana, Indianapolis Division

FILED
JAN 05 2015
U.S. CLERK'S OFFICE
INDIANAPOLIS, INDIANA

Daryl Hill

File No.

Vs

White Jacobs & Associates, Inc., and
Lexon Insurance Co.

1:15-cv-0009 JMS-MJD

_____/

**Complaint**

Comes now, **Daryl Hill**, by counsel for his complaint against defendant **White Jacobs & Associates, Inc.** (White Jacobs) states as follows: (Unless otherwise indicated, all facts apply to all counts.)

STATEMENT OF JURISDICTION AND VENUE

1. Jurisdiction of this court arises under 28 USC §1331. Supplemental jurisdiction exists for the state law claims under 28 U.S.C. 1367. Jurisdiction relating to the surety bond arises under 28 USC §1352. Surety defendant Lexon Ins. Co. is domiciled in Texas, but is authorized to underwrite insurance in Indiana.

2. Venue is proper as the plaintiff for all times relevant to this lawsuit was a resident of Marion County, Indiana. Defendant White Jacobs & Associates, Inc. is a Texas corporation that advertises nationally, and in this case knowingly did business with an Indiana-resident consumer. Surety defendant Lexon Ins. Co. is domiciled in Texas but is authorized to underwrite insurance in Indiana.

INTRODUCTION

3. This action is brought by the plaintiff, an adult Indiana resident for Federal and State claims relating to commerce with defendant, White Jacobs & Associates, Inc., a credit repair organization. Defendant Lexon Insurance Co. is named as a defendant solely in its capacity as guarantor of a surety bond for defendant White Jacobs & Associates, Inc.

4.      Sometime in 2013 the plaintiff was in the market for a mortgage loan. He discussed his credit with a mortgage broker, and the mortgage broker suggested that he contact White Jacobs & Associates, Inc. (Hereinafter, "White Jacobs")

5.      The Plaintiff looked up White Jacobs on the web and saw that they promised to help with repairing a damaged credit rating.

6.      Plaintiff contacted White Jacobs. White Jacobs sent Plaintiff a packet of information to sign including an account information sheet, a "consumer credit file rights under state and federal law" form, a contract, and a limited power of attorney. On the "Client Account Information Sheet", Plaintiff disclosed that he lived in Indianapolis, Indiana. The packet also included a "Payment Agreement for Daryl Hill" specifying an initial payment for services as $699.00 with payment dates 12/30/13 $100.00, 01/15/14 199.66, 02/15/14, $199.66 and 03/15/2014 $199.68 and that these fees would be deducted from the plaintiff's bank account by ACH (automated clearing house) deductions. In addition, 6 "monthly maintenance fees" of $89.00 would be deducted "up to and not exceeding six (6) monthly charges, provided that services have been performed for the preceding month." Under the contract, the "monthly maintenance fees" are contingent on some services being rendered, but the $699 initial payment was not contingent on services and was payable in advance of services being rendered under the contract. The date of the contract was 12/30/2013. Copy of the contract is attached and incorporated as **Exhibit A**.

7.      Plaintiff signed the contract via e-signature at while located at his home in Indianapolis, Indiana.

8.      In total, Plaintiff paid $966.00 to Defendant under the contract.

9.      Defendant White Jacobs filed a declaratory judgment lawsuit in the County Court at Law #5, Collin County Texas, on 6/23/2014, captioned as *White Jacobs & Associates, Inc. vs. Daryl Hill*, Cause 005-01003-2014, Plaintiff Daryl Hill filed a special appearance objecting to personal jurisdiction, which was denied by the court December 19, 2014. At the time of the filing of this complaint, the state court case is set for trial, January 8, 2015.

## Count I – Violation of Federal Credit Repair Organizations Act. 15 USC 1769

10. Plaintiff is a "consumer" for purposes of the act.

11. Defendant is a "credit repair organization" for purposes of the act. For purposes of the statute, a Credit Repair Organization is "any person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform (or represent that such person can or will sell, provide or perform) any service in return for the payment of money or other valuable consideration for the express or implied purpose of – (i) improving any consumer's credit record, credit history, or credit rating or ((ii) providing advice or assistance to any consumer with regard to any activity or service described in clause (i).

12. Defendant's contract with plaintiff, transmitted through interstate commerce via email, is expressly for the purpose of credit repair, referring to the term "credit repair" at least five times.

13. White Jacobs provided to the plaintiff a statement of Consumer Credit File Rights Under State and Federal Law" using verbatim the language in 15 USC §1679(c). White Jacobs was aware of the requirements of the Credit Repair Organization Act. White Jacobs was aware that contract was covered by the Credit Repair Organization Act, but White Jacobs willfully violated the act's requirements.

14. The contract charged an advance fee. This is in violation of 15 USC §1679b(b).

15. The contact did not contain a detailed description of the services to be performed. The contract did not contain an estimate of the date by which the services would be complete. The contract did not contain the length of time necessary to perform the services. The contract did not contain a conspicuous statement of cancellation rights in immediate proximity to the consumer's statement. All of the items in this paragraph are in violation of 15 USC §1679d(b).

Wherefore Plaintiff seeks a declaration that the contract is void (pursuant to 15 USC §1679(e), actual damages in the amount charged, punitive damages pursuant to statute and attorney fees pursuant to 15 USC §1679g.

### Count II – Indiana Credit Services Organization Act

16. Defendant is a "credit services organization relating to the transactions at issue in this complaint in that defendant represented that it could or would improve the buyer's credit record, credit history or credit rating.

17. Plaintiff is a "buyer" for purposes of the statute as a person who purchases or solicits to purchase the services of a credit services organization.

18. The improved credit rating sought and promised was for the purpose of an extension of credit.

19. The contract referenced in this complaint included the following "deceptive acts" as prohibited in I.C. §24-15-5. Charging or receiving money before complete performance of the credit services agreement without the posting of a bond. I.C. §24-5-15-5(1) and taking a power of attorney from a buyer for purposes other than the inspecting of documents I.C. §24-5-15-5(5).

20. The contract did not include the disclosure mandated in IC 24-5-15-6 including disclosure of the right to claim against a bond, information on the bond, and other information of consumer rights.

21. White Jacobs failed to obtain a surety bond in Indiana as required by §24-5-15-8. (Defendant obtained a bond in Texas, but that bond does not comply with Indiana requirements.)

22. Wherefore the plaintiff claims damages equal to two times actual damages plus attorney fees pursuant to IC §24-5-15-9.

### Count III – Texas Credit Services Organization Act, Chapter 393 Texas Finance Code

23. Plaintiff is a "consumer" for purposes of §393.001(1).

24. Defendant is a "credit services organization" under §393.001(3).

25. Defendant failed to provide plaintiff with a disclosure statement meeting the requirements of §393.105. The statement failed to inform the consumer of the right to claim against a surety bond. The disclosure failed to include a statement about the availability of nonprofit credit counseling services.

26. The credit services organization contract given to plaintiff did not contain the terms mandated by Section 393.201. The contract did not contain the payment terms, including the total payments to be made

by the consumer. The contract did not fully describe the services including each guarantee and each promise of a full or partial refund and the estimated period for performing the services not to exceed 180 days. The contract did not include the name and address of the organization's agent (in Texas) authorized to receive service of process.

27.     Although White Jacobs did not notify the plaintiff of the presence of a surety bond. Upon information and belief, White Jacobs did have a surety bond issued by Lexon Ins. Co.

**Wherefore** the plaintiff claims damages under the Texas Credit Services Organization Act, actual damages in the amount of $966, punitive damages, attorney fees and costs. Further plaintiff claims the right to levy against the Lexon Insurance Co. bond for all or part of the damages claimed.

Wherefore all: the plaintiff seeks $966.00 in actual damages, $966.00 in statutory damages pursuant to Indiana law, punitive damages in the amount of $2,898 (three times actual damages) or other amount as proven at trial pursuant to Federal and Texas law, attorney fees pursuant to Indiana, Texas and Federal law, plus costs.

Respectfully Submitted,

Steven R. Hofer
Counsel for the Plaintiff, Daryl Hill

Steven R Hofer, Indiana Bar 11584-49
Consumer Law Office of Steve Hofer
8888 Keystone Crossing, Suite 1300
Indianapolis IN 46240
(317) 662-4529

I certify that I have redacted social security numbers and other personal identifiers from the documents submitted.

Steven R. Hofer